UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRITTNEY B.,[1]

                                                    Plaintiff,                    Case # 21-CV-686-FPG

v.                                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                 Defendant.

## INTRODUCTION

Plaintiff Brittney B. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 14. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In 2015, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 11, 101. She alleged disability since January 2012 due to, among other things, various spinal issues. Tr. 101. Plaintiff received unfavorable determinations at the administrative level,

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

1

but, on appeal to this Court, Plaintiff and the Commissioner agreed to a stipulated order for remand. Tr. 593-94.  In January 2021, Administrative Law Judge Paul Georger ("the ALJ") issued a decision finding that Plaintiff is not disabled, which constitutes the Commissioner's final decision. Tr. 490-98; *see also* ECF No. 14-1 at 3 n.3; *Hatcher v. Saul*, No. 18-CV-2282, 2021 WL 1207315, at *4 (E.D.N.Y. Mar. 31, 2021).  This action seeks review of that decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2012, her alleged onset date.[4] Tr. 493. At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines, status-post lumbar discectomy and fusion with instrumentation, morbid obesity, asthma, depression, anxiety, and post-traumatic stress disorder ("PTSD"). *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work with additional limitations. Tr. 495. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 497. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 497-98. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 498.

### II. Analysis

Plaintiff argues that remand is warranted on several grounds. The Court agrees that remand is proper, though on a more basic ground underlying Plaintiff's arguments: the ALJ did not sufficiently explain the rationale for the RFC that he constructed.

It is well-settled that an ALJ's reasoning "must be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020). If the ALJ does not explicitly articulate, or a reviewing

---

[4] At the first hearing, held on September 12, 2017, Plaintiff's attorney requested an amended onset date of January 2015. Tr. 88. Neither of the ALJ's decisions reflects the amendment. *See* Tr. 13, 493.

court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ either cherry-picked the evidence to justify a pre-ordained conclusion, or interpreted the medical evidence based on his own lay judgment—both of which constitute error. *See, e.g.*, *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("Reviewing courts decry administrative 'cherry picking' of relevant evidence."); *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("[A]n ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." (internal quotation marks and brackets omitted)).  Put simply, the ALJ must tether the restrictions in the RFC to competent evidence and must provide a sufficient explanation to ensure "meaningful judicial review." *Moss*, 2020 WL 896561, at *3.

In this case, the ALJ determined that Plaintiff suffered from a number of several physical and mental impairments. *See* Tr. 493.  The ALJ concluded that, as a result of those impairments, Plaintiff could only perform a limited range of sedentary work. Tr. 495.  Plaintiff was more limited in that she could never climb ramps, stairs, ladders, rope or scaffolds; could never balance, kneel, crouch or crawl; could occasionally stoop; could never work in humidity and wetness or around dust, odors, fumes, or other pulmonary irritants; could never work in extreme cold or extreme heat; could only perform simple, routine, repetitive tasks; could make only simple, work-related decisions; could occasionally interact with supervisors, co-workers, and the general public; and must be able to alternate from sitting to standing every twenty minutes. Tr. 495.

The opinion evidence in the record does not correlate with these highly specific restrictions. In July 2015, treating physician Jeffrey Lewis, M.D., opined that Plaintiff could stand and/or walk

less than two hours per day and could sit less than six hours per day, with no other restrictions.  Tr. 363.  In August 2015, consultative examiner Hongbiao Liu, M.D., diagnosed Plaintiff with autoimmune hepatitis, chronic neck and back pain, hypertension, and asthma, and he opined that Plaintiff had a "mild to moderate limitation for prolonged walking, bending, and kneeling."  Tr. 369.  Dr. Liu also stated that Plaintiff "should avoid smoke and other irritating factors to limit asthma attacks."  *Id.*  There was no opinion from a medical source related to Plaintiff's mental health impairments.

In his decision, the ALJ gave "some weight" to Dr. Lewis's and Dr. Liu's opinions.  Tr. 496.  However, it is unclear which portions the ALJ credited, since the limitations those medical sources identified are not reflected in the RFC.  Dr. Lewis identified standing, walking, and sitting limitations that were inconsistent with sedentary work, which requires a person "to sit for up to six hours per day . . . [and] to stand and walk for up to two."[5]  *Chelsea V. v. Comm'r of Soc. Sec.*, No. 20-CV-501, 2021 WL 2649650, at *3 (W.D.N.Y. June 28, 2021).  Dr. Liu identified only mild-to-moderate limitations in prolonged walking, bending, and kneeling, yet the ALJ included a variety of other exertional limitations.  *See* Tr. 369, 495.  And neither medical source identified any restrictions related to Plaintiff's mental health, while the ALJ crafted several detailed non-exertional mental restrictions.  *See* Tr. 495.

In addition, the ALJ's reasoning related to the opinion evidence is confusing.  The ALJ suggested that Dr. Lewis's opinion was intended to be a reflection of Plaintiff's temporary, post-

---

[5] The Commissioner disputes that Dr. Lewis's limitations are inconsistent with sedentary work.  The Commissioner notes that an eight-hour workday "includes a morning break, lunch period, and afternoon break."  ECF No. 14-1 at 17.  Because sedentary work "does not require *exactly* 2 hours of standing/walking and *exactly* 6 hours of sitting," the Commissioner interprets Dr. Lewis's opinion to mean that Plaintiff was capable of sitting for slightly less than six hours and of standing/walking for slightly less than two hours, which could be adequately accommodated with ordinary workday breaks.  *See id.*  The Commissioner's argument is an "impermissible *post hoc* rationalization."  *Debbie I. v. Comm'r of Soc. Sec.*, No. 19-CV-1089, 2020 WL 6866378, at *3 (W.D.N.Y. Nov. 23, 2020).  As his decision makes clear, the ALJ did not interpret Dr. Lewis's opinion as consistent with the RFC, since he gave only "some weight" to it and found Dr. Liu's opinion more persuasive.  *See* Tr. 496.

surgery condition. *See* Tr. 496. If so, then it would make sense for the ALJ to reject Dr. Lewis's opinion outright. But the ALJ does not take that tack—he instead gave Dr. Lewis's opinion "some weight," though the manner in which he did so is undisclosed. *Id.* The ALJ also claimed to reject Dr. Lewis's opinion on the basis of Dr. Liu's opinion, whose "findings and diagnoses" were "consistent with the overall record." *Id.* Despite its purported consistency with the record, the ALJ only gave "some weight" to Dr. Liu's opinion. Plus, the ALJ's ultimate RFC is significantly more restrictive than Dr. Liu's position. *Id.*

It is therefore difficult for the Court to reconstruct how and why the ALJ arrived at the restrictions he identified in the RFC. To some extent, the ALJ appears to have accepted Plaintiff's testimony. For example, at the post-remand hearing, Plaintiff testified that she could sit for, at most, twenty minutes at one time. Tr. 517-18. The ALJ may have relied on this testimony to arrive at the sit/stand opinion he identified in the RFC. *See* Tr. 495. Yet the ALJ's limitation is different than Plaintiff's testimony: whereas the ALJ found that Plaintiff must alternate from sitting to standing every twenty minutes, Plaintiff testified that she could sit for twenty minutes only if she were seated in a "leaning" position, as on a couch; if she were in a chair, she could sit for only five minutes. Tr. 518. Because the ALJ's decision contains no discussion of how he evaluated Plaintiff's testimony, the Court is unable to determine the degree to which and manner in which the ALJ relied on it.

At bottom, the ALJ's decision is too unclear to survive review. Leaving aside the fact that the Court cannot discern how the ALJ constructed the RFC, the Court is concerned that the ALJ may have relied on his own lay judgment to evaluate raw medical data. *See Kelly W. v. Comm'r of Soc. Sec.*, No. 20-CV-581, 2022 WL 600838, at *4 (W.D.N.Y. Mar. 1, 2022) ("An ALJ is of course free to analyze medical records to determine what the weight of the evidence supports, but

that does not give him a license to interpret raw medical data that would require the expertise of a physician or other trained medical source." (internal quotation marks omitted)).  At step three, the ALJ purported to determine the limitations resulting from Plaintiff's anxiety, depression, and PTSD, all without any opinion evidence.  *See* Tr. 494; *Crawley v. Berryhill*, No. 16-CV-271, 2018 WL 2354984, at *4 (W.D.N.Y. May 24, 2018) ("[T]he ALJ was not permitted to simply rely on his own lay interpretation of Plaintiff's psychiatric records.").  In the RFC section of the decision, the ALJ simply summarized Plaintiff's imaging and clinical findings—medical data that the ALJ did not have "the requisite expertise" to evaluate.[6]  *Kelly W.*, 2022 WL 600838, at *4.  And, as already noted, the ALJ gave only partial credit to the only two medical opinions in the record.  *See Winters v. Comm'r of Soc. Sec.*, No. 18-CV-1049, 2020 WL 1061491, at *6 (W.D.N.Y. Mar. 5, 2020) ("[B]y discounting all medical opinions of record, . . . the ALJ was left without a proper assessment of [the claimant's] limitations, causing the ALJ to improperly render an RFC assessment based on his own lay opinion.").

      For all of these reasons, the Court concludes that remand is appropriate.  Given the inadequacies of the post-remand decision, the Court orders the Commissioner, on remand, to (1) recontact Dr. Lewis for a new medical assessment of Plaintiff's conditions, (2) order a new consultative examination related to Plaintiff's physical impairments, and (3) order a new consultative examination related to Plaintiff's mental impairments.  The Commissioner may also take any other steps to ensure a complete medical record.  Furthermore, because of the time that

---

[6] Dr. Liu and Dr. Lewis created their opinions in summer 2015, after Plaintiff had undergone one surgery on her spine.  Plaintiff went on to have several more such surgeries, and the record does not contain any opinion evidence illuminating Plaintiff's condition after those surgeries.

Plaintiff's application has been pending, the Court encourages the Commissioner to expedite the proceedings on remand.[7]

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner, shall (1) recontact Dr. Lewis for a new medical assessment of Plaintiff's conditions, (2) order a new consultative examination related to Plaintiff's physical impairments, and (3) order a new consultative examination related to Plaintiff's mental impairments. The Court encourages the Commissioner to expedite the proceedings on remand. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 4, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[7] Plaintiff requests that the Court order the Commissioner to reassign the case to a new ALJ. *See* ECF No. 15 at 9. The Court will not issue such an order and will instead leave the matter to the Commissioner's discretion. *See Roberto v. Saul*, No. 20-CV-1923, 2021 WL 3912298, at *8 (E.D.N.Y. Sept. 1, 2021) (discussing standards for reassignment).